KAREN LECRAFT HENDERSON, Circuit Judge,
dissenting:
My colleagues and I agree that the only way Kathy Adams (Adams) survives summary judgment in favor of the U.S. Department of State (Department) on her Rehabilitation Act claim is under 29 U.S.C. § 705(20)(B)(ii), the “record of impairment” definition of “disability.”[1] Applying *955 the well-settled standard set forth in Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), I am convinced that Adams “has failed to make a sufficient showing on an essential element of her case.” Accordingly, I believe the district court correctly granted summary judgment to the Department and I respectfully dissent.[2]
To be an “individual with a disability” under the second prong of section 705(20)(B), Adams must “ha[ve] a record of such an impairment.” “Such an impairment” refers to the first prong, that is, an “impairment which substantially limits one or more ... major life activities,” 29 U.S.C. § 705(20)(B)(i). See Webster’s Third New Int’l Dictionary 2283 (1993) (defining “such” as “having a quality already or just specified”). Thus, there must be a record, or a history, showing that at some time before the alleged discrimination Adams had a disability under the first prong. See Heisler v. Metro. Council, 339 F.3d 622, 630 (8th Cir.2003) (“To have a record of an impairment, an employee must ‘ha[ve] a history of ... a mental or physical impairment that substantially limits one or more major life activities.’ ” (quoting 29 C.F.R. § 1630.2(k) (alteration in Heisler))). While it is undisputed that she had an impairment—breast cancer—during the fall of 2003, she offered no evidence that her impairment substantially limited her in a major life activity at any time before the alleged discriminatory acts in December 2003 and March 2004.[3] Instead, Adams relied on allegations made long after the fact. In her amended complaint, filed some 15 months after the Department reduced her medical clearance, Adams asserted for the first time that she “is ... limited in the major life activity of sexual contact and romantic intimacy” and “[tjhis limitation may be due to a variety of physical and psychological effects of cancer treatment.” Adams v. Rice, No. 05-941, Am. Compl. ¶ 12 (D.D.C. filed March 9, 2005) (emphasis added).[4] She elaborated somewhat in a subsequent declaration:
Like many breast cancer survivors, whether by virtue of my discomfort with the way my body looks, loss of sensation after my surgeries, my deepseated fear that prospective suitors will reject me because of my history of cancer, loss of a breast, and current physical appearance, or the side effects of medication that causes loss of libido, I now find the prospect of dating and developing an intimate relationship just too painful and frightening.
Nov. 26, 2005 Decl. of Kathy E. Adams ¶49 (emphasis added). In both statements, Adams described only a current *956 (2005) limitation, using a present tense verb and the adverb “now.” She has never asserted that the limitation (and thus her disability) existed before the alleged discrimination. In the absence of any record—documentary, or otherwise—of a qualifying impairment when she was allegedly discriminated against, the second prong was not satisfied and therefore Adams was not as a matter of law an “individual with a disability” protected under the Act. That the second prong requires a record that manifests both a physical or mental impairment and its substantial limitation on a major life activity is reinforced by decisions from other circuits.
In EEOC v. R.J. Gallagher Co., 181 F.3d 645 (5th Cir.1999), the Fifth Circuit recognized that under the definition of “disability” in the Americans with Disabilities Act (ADA), 42 U.S.C. § 12102(2)(A), which tracks almost verbatim the Rehabilitation Act’s definition of “individual with a disability,”[5] the historical record must indicate both an impairment and a major life activity limitation. The Gallagher court relied on the Supreme Court’s decision in Sutton v. United Air Lines, 527 U.S. 471, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999) (Sutton), in which the Court held that neither of two severely myopic sisters, who had been rejected for positions as commercial airline pilots, had a disability under the ADA. The Court explained that, although each sister had an impairment (severe myopia), the impairment did not limit a major life activity at the time they claimed they were discriminated against because each sister’s vision was by then normal (or better) with corrective lenses. Citing Sutton, the Gallagher court rejected a portion of the EEOC interpretive guidance promulgated in 1991 stating that the record of impairment prong “ ‘protects former cancer patients from discrimination based on their prior medical history’ ” 181 F.3d at 655 (quoting 29 C.F.R. pt. 1630, App. § 1630.2(k)) (interpreting statutory phrase “record of such impairment”). The court explained:
This broad position obviously cannot be the rule in the wake of Sutton, which emphasizes both the ADA’s requirement of individualized inquiry and a focus on the actual effects of the impairment. In other words, it is not enough for an ADA plaintiff to simply show that he has a record of a cancer diagnosis; in order to establish the existence of a “disability” under § 12102(2)(B), there must be a record of an impairment that substantially limits one or more of the ADA plaintiffs major life activities.
Id. (emphasis added). Here, as in Gallagher, there was a record of cancer but no record of any substantial limitation it produced.
Even more on point is the Second Circuit’s decision in Colwell v. Suffolk County Police Department, 158 F.3d 635 (2d Cir.1998). In Colwell, three police officers asserted they had been passed over for promotion on account of the lingering effects of past injuries, claiming they were disabled under all three prongs of the ADA definition. The Second Circuit first rejected the plaintiffs’ impairment claims under the first prong because they failed to produce “evidence sufficient to show that the limitation [each] suffered with respect to a major life activity was substan *957 tial.” 158 F.3d at 645. The court then addressed the plaintiffs’ record of impairment claims and rejected them as well, quoting language from the same EEOC interpretive guidance discussed in Gallagher. [6] The interpretive language the Col-well court discussed states: “This part of the definition is satisfied if a record relied on by an employer indicates that the individual has or has had a substantially limiting impairment.” 29 C.F.R. pt. 1630, App. § 1630.2(k) (emphases added). Relying on this language, the court rejected the plaintiffs’ contention that their personnel records “show[ed] a history of a substantially limiting impairment” because “the records of impairment that each plaintiff showed involved no greater degree of limitation of major life activities than the continuing impairments they showed.” 158 F.3d at 645. In the Second Circuit’s view, the personnel records were inadequate to establish a “record” of a qualifying impairment under the second prong because they manifested only an impairment and not a resulting major life activity limitation.
Like the plaintiffs in Colwell, Adams has pointed to a record existing at the time of the alleged discrimination that identified an impairment but none that even suggested a resulting substantial limitation. To the contrary, the record in late 2003 to early 2004 painted a rosy picture of Adams’s condition, indicating she had made a full recovery. See, e.g., 12/9/03 Letter from Adams to State Dep’t Office of Med. Servs. (reporting after doctor visit: “Everything is fine.”); 11/19/03 Letter from Dr. Mark A. O’Rourke to State Dep’t (“At this time, Kathy has no job limitations whatsoever. She is cancer-free and is able to undertake a full schedule of work, travel, and vigorous sports, as she had already enjoyed.... I can say with complete confidence that this history of breast cancer will not slow her down one bit at all.”); 1/12/04 Letter from Dr. Mark A. O’Rourke to State Dep’t Bd. of Exam’rs for Foreign Serv. (“She has fully recovered from her surgeries ... She remains cancer-free.... Kathy’s post-cancer status is in no way incapacitating. She has no performance limitations whatsoever on her ability to work, travel, or engage in the vigorous sports she enjoys....”). Given that she had no record of a qualifying impairment when the Department reduced her medical clearance and denied her a waiver, she could not then be an individual with a disability under 29 U.S.C. § 705(20)(B) so as to be protected by the Act. In asserting otherwise, the majority does precisely what the Fifth Circuit in Gallagher proscribed as contrary to Sutton, namely, finding that a person has a disability based on a record of a cancer diagnosis but without a record of a resulting substantial limitation. See Gallagher, 181 F.3d at 655. The majority’s holding similarly conflicts with the Second Circuit’s conclusion in Colwell, 158 F.3d at 645.
*958 Most recently, the Eleventh Circuit decided a first prong Rehabilitation Act claim that is nonetheless strikingly similar to Adams’s. In Garrett v. University of Alabama, Birmingham, 507 F.3d 1306, 1315 (11th Cir.2007), the plaintiff, who was also diagnosed with breast cancer, underwent two surgeries, a course of radiation and chemotherapy treatments between August 1994 and June 1995. She returned to work in July 1995 and on July 21, 1995, her supervisor allegedly demoted her on account of her cancer. Garrett’s limitations included “caring for herself, performing manual tasks, lifting, and working.” Id. at 1310. The Eleventh Circuit affirmed the grant of summary judgment to the defendant, rejecting the plaintiffs reliance “not only upon the status of her impairments and limitations prior to [demotion] but also [her] misplacefd] ... reliance upon her condition years after.... ” Id. at 1312. Adams’s reliance on her belated claim of a sexual limitation in 2005 is equally misplaced—and fatal to her case. In accepting her claim as a sort of nunc pro tunc allegation, the majority directly clashes with the Eleventh Circuit’s holding in Garrett.[7] As the Eleventh Circuit correctly stated: “The Rehabilitation Act does not protect employees who become disabled after the discriminatory act, but protects those employees who were disabled at the time of the discriminatory act.” 507 F.3d at 1315.
Additionally, the majority’s focus on notice in this case is a spectacular red herring. See maj. op. 950-53, 953-54. Notice is not an issue because Adams did not have the requisite record of which the Department could have had notice when it reduced Adams’s medical clearance. Nonetheless, given the support for such a requirement in the case law, I cannot let pass unchallenged the majority’s dicta rejecting a notice requirement.
The Rehabilitation Act imposes liability only if the employer discriminates against the applicant “solely by reason of her or his disability,” 29 U.S.C. 794(a). In Crandall v. Paralyzed Veterans of America, 146 F.3d 894 (D.C.Cir.1998), we made clear that the quoted language requires that the employer be on notice of the claimed “disability,” that is, on notice of both the impairment and the resulting limitation that together constitute the disability.[8] See § 705(20)(B)(i). In Crandall, the plaintiff was fired for “acts of rudeness” *959 and afterward disclosed to the employer that he had been diagnosed as suffering from bi-polar disorder. The district court granted summary judgment to the employer, holding that “no reasonable factfinder could have found that [the employer] discriminated on the basis of [the employee’s] disability, since it had neither actual nor constructive notice of his disability when it fired him.” 146 F.3d at 895. We affirmed, declaring quite broadly:
The courts of appeals have overwhelmingly agreed that for this causal link to be shown the employer must have acted with an awareness of the disability itself, and not merely an awareness of some deficiency in the employee’s performance that might be a product of an unknown disability. They have so found under both the Rehabilitation Act itself and the analogous provision of the [ADA], 42 U.S.C. § 12112(a) (providing that no employer “shall discriminate against a qualified individual with a disability because of the disability of such qualified individual.... ”). See, e.g., Taylor v. Principal Financial Group, Inc., 93 F.3d 155, 163 (5th Cir.1996) (“To prove discrimination [under the ADA], an employee must show that the employer knew of such employee’s substantial physical or mental limitation.”); Morisky v. Broward County, 80 F.3d 445, 447-49 (11th Cir.1996) (liability under the ADA requires actual or constructive notice of the disability); Collings v. Longview Fibre Co., 63 F.3d 828, 834 (9th Cir.1995) (assuming plaintiffs had a medically recognizable drug disability, they could not make out a case under the ADA where they could not show that employer was aware of it); Miller v. National Casualty Co., 61 F.3d 627, 629 (8th Cir.1995) (under ADA, “[b]efore an employer must make accommodation for the physical or mental limitation of an employee, the employer must have knowledge that such a limitation exists.”); Hedberg v. Indiana Bell Tel. Co., 47 F.3d 928, 932 (7th Cir.1995).
146 F.3d at 896-97 (emphases added). That Crandall and the decisions it quotes use “disability” and “limitation” rather than “impairment”—each of which terms has a precise statutory meaning—manifests that the employer must have notice of both the impairment and the limitation that make up the disability. And it is of no consequence that Crandall is a first prong case because a second prong case must incorporate a first prong disability. See infra note 11.
To support its contention that an employer need have notice only of an impairment and not of a limitation (at least if the limitation does not require accommodation, see maj. op. 953-54), the majority looks to the Supreme Court’s decision in Bragdon v. Abbott, 524 U.S. 624, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998), in which the Court concluded that a woman infected with the human immunodeficiency virus (HIV) was disabled under the first prong because her impairment, HIV, limited her major life activity of reproduction. 524 U.S. at 631, 118 S.Ct. 2196. The majority emphasizes that “the Court said nothing about whether the dentist knew or cared that the plaintiff was limited in the major act of reproduction.” Maj. op. 951. The Court’s silence, however, is unremarkable given that the dentist’s knowledge vel non of the limitation was not one of the issues the respondent dentist raised in his petition and on which the court granted certiorari. See Bragdon, 524 U.S. at 628, 118 S.Ct. 2196 (“We granted certiorari to review, first, whether HIV infection is a disability under the ADA when the infection has not yet progressed to the so-called symptomatic phase; and, second, whether the Court of Appeals, in affirming a grant of summary judgment, cited sufficient material in the record to determine, as a matter of law, that respondent’s infection with HIV *960 posed no direct threat to the health and safety of her treating dentist.”) (emphasis added).[9]
In sum, because Adams had no record— documentary, or otherwise—of a qualifying impairment when the Department allegedly discriminated against her,[10] I would affirm the district court’s grant of summary judgment on the ground that she was “unable to demonstrate that she is disabled within the definition of the Rehabilitation Act.” 484 F.Supp.2d at 17.[11] I *961 therefore respectfully dissent.[12]

. The Rehabilitation Act of 1973 (Rehabilitation Act or Act) defines "individual with a disability" as
"any person who—
(i) has a physical or mental impairment which substantially limits one or more of such person’s major life activities;
(ii) has a record of such an impairment; or
(iii) is regarded as having such an impairment.
Id. § 705(20)(B). Adams has no claim under section 705(20)(B)(i) ("first prong”) because her physical impairment—Stage one breast cancer—was "cured” by her mastectomy and she does not meet section 705(20)(B)(iii) ("third prong”) under Gasser v. District of Columbia, 442 F.3d 758 (D.C.Cir.2006); see also Duncan v. Washington Metro. Area Transit Auth., 240 F.3d 1110 (D.C.Cir.2001) (en banc). Her remaining claim is her "record of impairment” ("second prong”) claim.

. In light of my dissent from the “record of impairment” holding, I would not reach the question, as yet unanswered in this Circuit, whether sexual activity constitutes a major life activity under the statutory definition. In asserting that such a limitation exists, the majority relies on Bragdon v. Abbott, 524 U.S. 624, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998), in which the United States Supreme Court held only that "reproduction" is a major life activity. See 424 U.S. at 638-39, 96 S.Ct. 1083. The Bragdon Court did not address whether sexual activity outside of the reproduction context qualifies as Adams claims.

. Because the inquiry focuses on "such person's major life activities,” 29 U.S.C. § 705(20)(B)(i) (emphasis added), it does not suffice that a record of breast cancer can substantially limit a major life activity. Instead, Adams must demonstrate that at the time of the alleged discrimination she had such a record.

.Adams, herself a lawyer, made no mention of the alleged sexual limitation in her EEOC complaint or her original district court complaint. In fact, in her EEOC complaint dated July 22, 2004—several months after the alleged discrimination occurred—she affirmatively declared that she had "resumed all physical activities,” making no exception for sexual activities. Formal Compl. of Discrimination 1 (emphasis added).

. The ADA definition of “disability” provides: The term "disability” means, with respect to an individual—
(A)a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
(B) a record of such an impairment; or
(C) being regarded as having such an impairment.
42 U.S.C. § 12102(2).

. The EEOC interpretive guidance on the record of impairment prong states in pertinent part:
The second part of the definition provides that an individual with a record of an impairment that substantially limits a major life activity is an individual with a disability. The intent of this provision, in part, is to ensure that people are not discriminated against because of a history of disability. For example, this provision protects former cancer patients from discrimination based on their prior medical history. * * * This part of the definition is satisfied if a record relied on by an employer indicates that the individual has or has had a substantially limiting impairment. The impairment indicated in the record must be an impairment that would substantially limit one or more of the individual’s major life activities. There are many types of records that could potentially contain this information, including but not limited to, education, medical, or employment records.
29 C.F.R. pt. 1630, App. § 1630.2(k).

. Adams’s 2005 allegations suffer from yet another defect the Gairett court highlighted. Her amended complaint and her declaration describe the causal link between her cancer treatment and the alleged sexual limitation only "in general and vague terms,” 507 F.3d at 1315 (noting "the lack of any objective evidence of the extent of Garrett’s limitations”) (emphasis added). See Am. Compl. ¶ 12 ("may be due to”); Adams Decl. ¶ 49 (“whether by virtue of”).

. In Crandall, we applied the version of section 794(a) in effect at the time of the alleged discrimination, which version prohibited discrimination against an "otherwise qualified handicapped individual in the United States ... solely by reason of his handicap,” 29 U.S.C. § 794(a) (1992). Although the language was amended in 1992 to replace "handicap” with "disability,” see Pub.L. No. 102-569, § 102(p)(36), 106 Stat. 4344, 4360 (1992), the earlier version defined "individual with handicaps" in the same way that the current version defines "individual with a disability.” Compare 29 U.S.C. § 706(8)(B) (1992) with 29 U.S.C. § 705(2)(B)(2008). Notwithstanding we applied the "handicap” version in Crandall, we used the then-current statutory term "disability” throughout the text of the opinion in place of the dated "handicap.” Compare 146 F.3d at 896 (quoting statutory prohibitions against discriminating against a "handicapped individual ... solely by reason of his handicap”) with id. at 897 (rejecting argument that "if the poor performance causes dismissal, then the dismissal was ‘by reason of the disability” so as to satisfy the statutory prohibition).

. While I have assumed arguendo that sexual activity constitutes a major life activity, see supra note 2, I note that the Department's position is that sexual activity "can” qualify "to the [extent] that procreation may be implicated.” Oral Arg. at 20:15. But the Department has nowhere accepted that Adams had that limitation at the time of the medical clearance denial nor could it inasmuch as at that point she had not even mentioned the limitation. In fact, Adams's counsel, in response to a question about Adams's failure to so note in her EEO complaint, said that an immediate limitation resulted from the treatment. Oral Arg. at 17:15. Adams's physical impairment, however, was the breast cancer, not the mastectomy. While I agree that the Department did not define what precisely the "record” of impairment must comprise under prong two, we of course are free to affirm on that ground. See In re Swine Flu Immunization Prods. Liab. Litig., 880 F.2d 1439, 1444 (D.C.Cir.1989). Moreover, because the issue is one of statutory construction, I believe we are obligated to construe it accurately. See Eldred v. Ashcroft, 255 F.3d 849, 853 (D.C.Cir.2001) (en banc) (" 'When an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law.' ”) (quoting Kamen v. Kemper Fin. Servs., Inc., 500 U.S. 90, 99, 111 S.Ct. 1711, 114 L.Ed.2d 152 (1991)); U.S. Nat’l Bank of Or. v. Indep. Ins. Agents of Am., Inc., 508 U.S. 439, 447, 113 S.Ct. 2173, 124 L.Ed.2d 402 (1993) ("[The] court may consider an issue antecedent to and ultimately dispositive of the dispute before it, even if the parties fail to identify and brief.” (ellipsis and quotations omitted)).

. The majority acknowledges that Adams could have described "with greater precision” when her sexual limitation began but finds it "reasonable to conclude that [it] began in September 2003,” maj. op. 949, as a result of her "course of treatment.” Id. The reasonableness of the majority's conclusion escapes me both in light of the showing Adams did make of her "full recovery” by December 2003, supra pp. 941-42, and in light of case law rejecting recuperation from surgery as a qualifying limitation. See, e.g., Garrett, 507 F.3d at 1315 (" 'A temporary inability to work while recuperating from surgery is not ... a permanent or long-term impairment and does not constitute evidence of a disability covered by the Act.’ ” (quoting Sutton v. Lader, 185 F.3d 1203, 1209 (11th Cir.1999))).

.Unlike the majority, I believe that Adams's first prong deficiency also dooms her second prong claim. Adams failed to establish a first prong disability because she offered no evidence that at the time she was allegedly discriminated against, she was simultaneously both impaired and limited in a major life activity so as to qualify under the first prong, which applies only to a person who “has a physical or mental impairment which substantially limits one or more of [her] major life activities.” (Emphasis added.) Significantly, each of the first prong's requirements is expressed in the present tense, indicating that each must occur simultaneously, that is, the person must have an impairment and the impairment must limit a major life activity at the same time. That the tense of the verbs is significant is clear from the Supreme Court's Sutton opinion, in which the Court relied heavily on the statute's use of “the present indicative verb form” of "limits,” which the Court interpreted as "requiring that a person be presently—not potentially or hypothetically—substantially limited in order to demonstrate a disability.” 527 U.S. at 482, 119 S.Ct. 2139. The verb "has” in the same provision is the same tense as "limits”—the present indicative. In other words, the plain language of the first prong requires that a disabled person have an impairment and a resulting limitation occurring together. In Adams’s case, the impairment—cancer—and the claimed limitation—fear of sexual activity-never coincided. Once Adams's treatment was complete, she no longer had an impairment because her cancer was gone. See 11/19/03 Letter from Dr. Mark A. O'Rourke to State Dep’t (declaring Adams "cancer-free”). Nor was Adams disabled under the *961 first prong before her treatment (when she still had the impairment of cancer) because she did not then experience the limitation she now claims. Her sexual limitation arose only after and as a result of her cancer treatment. See Nov. 26, 2005 Decl. of Kathy E. Adams ¶ 49 and Adams v. Rice, No. 05-941, Am. Compl. ¶ 12 (both quoted supra pp. 2-3). How long after, we can only guess on this record. See supra pp. 955-56 & note 4. Because Adams never had an impairment that, at the time she had it, substantially limited a major life activity under the first prong, she could likewise not have a “record of such an impairment” under the second prong.

. It is the timing of this case, I think, that makes it such a bad fit under the Rehabilitation Act and, consequently, a bad candidate for a precedent-setting opinion on the requirements of a second prong claim. There are record indications that, had Adams delayed pursuing her Foreign Service career somewhat longer than three months post-op, the Department would have considered her fit for duty. See, e.g., Brown Decl. ¶¶ 3, 4; FAQ (JA 104).